CLOPTON, J.,
delivered the opinion of the court.
Harrison M. Gibbs, by deed executed and admitted to record on the 22d day of April, 1839, conveyed to David Rodes in trust to secure to John Gibbs the payment of $425 and $1,000, all his said Harrison M. Gibbs’ right, title, interest, claim, or demand of every character and description of, in and to the estate real and personal, of Christopher Roberts, deceased, (Christopher Roberts, the decedent, was the brother of the wife of Harrison M. Gibbs, and had died intestate and without issue). On the 22d of May, 1839, the appellants, plaintiffs in the court below, recovered judgments against Harrison M. Gibbs, and on these judgments sundry executions of fieri facias were issued and returned “no property found.” On the 7th of August, 1839, the Hustings Court of Lynchburg, in a suit between the heirs of Christopher Roberts for partition of his real estate, decreed a sale of the whole real estate to be made by corn- *551 missioners for the purpose of division. In this suit, in which Harrison M. Gibbs and *Mary Ann, his wife, were defendants, Mary Ann Gibbs filed her separate answer, in which she consents to the sale of the said real estate, “provided her interest in the proceeds of said sale be so protected and guarded as to be secured to her sole and separate use during her life, and to her children at her death.” On the 22d of August, 1840, the appellants issued ca.' sas. on their judgments against Harrison M. Gibbs, under which he was taken and was discharged on the 27th of August, upon taking the oath of insolvency. On the 4th of November, 1840, the Hustings Court at Dynch burg appointed H. Dunning-ton commissioner to make sale of the lands of Christopher Roberts, decreed by that court on the 7th of August, 1839, to be sold; on the next day, the 5th of November, 1840, David Rodes, the trustee in the deed from Harrison M. Gibbs, sold all the interest of said Gibbs in the real estate of Christopher Roberts, and John Gibbs, the cestui que trust in that deed, became the purchaser at the price of $250; and on the same, day Rodes executed and acknowledged before two justices a deed conveying that interest to John Gibbs, the purchaser, but this deed was not delivered. At December rules, 1840, the appellants filed their bill, in which they attack the deed from Harrison M. Gibbs to Rodes, trustee, as fraudulent, and the sale made under it as void for gross inadequacy of price; (in the bill no allusion is made to the proceedings in the Hustings Court, and the decree for the sale of the real estate of Christopher Roberts). On the 16th of December, 1840, H. Dunnington made sale of the real estate of said Christopher Roberts, in pursuance of the decree of the Hustings Court of the 4th November, 1840, appointing him commissioner, and the proceeds of sales amounted to $12,091 07, after deducting the charges, &c. ; of these proceeds Mary Ann Gibbs was entitled to one-fifth or $2,418 03. (The sales were made upon credits of six, twelve, and eighteen months, and it does not appear from the record that Christopher Roberts left any personal estate. ) On the hearing, the bill of the ^plaintiffs was dismissed, and from that decree this appeal was allowed. To determine the rights of the respective parties, and whether the decree appealed from is correct, it is necessary in the first step to ascertain the true character of the deed in trust from Harrison M. Gibbs to Rodes, for the benefit of John Gibbs. The charge of fraud made against it by the bill, is positively denied by Harrison M. and John Gibbs in their several answers to the bill of the plaintiffs; and there is no evidence whatever having a tendency to impugn the deed; the only circumstance relied on as having such tendency is, that both these defendants admit in their answers, that the bond for $1,000 is entitled to credit for $22 35, and that for $425, to a credit for $400 — which credits were not mentioned in the deed; but this circumstance is not sufficient to impress the character of fraud upon the deed, which must therefore be considered as fair and bona fide.
It becomes necessary next to inquire what rights were acquired by the deed. These rights could not have been other or greater than those of Harrison M. Gibbs, the grantor. And what were his rights? As husband, he was entitled to a life estate in the real estate of the wife, to take the rents and profits during their joint lives, and as tenant by the curtesy, if he survived her; but neither he nor his grantee could assert his rights, except by resorting to a court of equity. As the wife was entitled to an undivided fifth part of the real estate, the aid of a court of equity must have been invoked to make partition, unless indeed the husband had recovered the accruing profits in the meantime, and thus vested the legal title in himself to such profits; and when the husband or his grantee should come into equity — asking partition — upon the well established ‘ principles of that court, the wife’s equity would attach and she would be entitled to an adequate settlement out of her own property, (though real estate;
Sturges v. Champness, 5 M. & Craig, 97 ; 3 Jurist, 840; Hansen *v. Keating, 4 Hare, 41; 14 Law Journal, new series, ch. 7, 13,) paramount to the claims of the husband or any creditor or alienee of his. These, then, were the rights of Mrs. Gibbs and her husband and his grantee, before the appellants obtained their judgments or acquired any lien whatever upon the property of the husband. When the judgments were obtained, the lien thereby acquired was subordinate to the rights of John Gibbs the cestui que trust in the deed, and his rights were subject to the wife’s equitable right to a settlement. This was the relative condition of the parties on the 7th of August, 1839, when the Hustings Court of Dynchburg decreed a sale of the real estate, Mrs. Gibbs assenting upon condition that her interest should be secured to her sole and separate use during her life, and to her children after her death. To the right thus asserted by her, she was entitled to the extent of a reasonable settlement against the world, and it could not thereafter be divested, except by her own act; and although the decree for the sale does not declare her to be entitled to a settlement, that can make no difference, as it was time enough after the sale had been made, and the value of the subject ascertained, for the court to make the settlement. They could then determine with greater accuracy what would amount to a reasonable one, and this, it may fairly be presumed, that court would long since have done, had this controversy not arisen.
In this view, the appellants were entitled, after a proper settlement made for Mrs. Gibbs, and after the payment of the debts secured by the deed to John Gibbs, if any thing remained, to have that surplus, or the annual interest accruing, applied to the *552 payment of their demands by virtue of their liens by judgment; but the liens by judgment were lost, when the writs of ca. sa. issued, and the debtor was taken in execution. Then another lien was acquired ; but this last lien could not and did not confer on the appellants any greater rights than they had under the first; and this last lien, by ca. *sa. executed, with all the rights acquired under it, was in force on the 5th of November, 1840, when Rodes, the trustee, sold the interest of Harrison M. Gibbs in the real estate of Christopher Roberts under the deed of April the 22d, 1839 — a sale which has been attacked for gross inadeqtíafcy of price, and as made under circumstances to render it void. The sale was of a husband’s interest in his wife’s undivided interest in real estate, made after the decree of a court 6f competent jurisdiction had directed a sale of the entire real estate for purposes of partition, and a few days only before it was sold, and the means thus to be furnished of ascertaining precisely the separate interest of all concerned. The sale of such an interest, under such circumstances, should be regarded as a mere nullity, and no impediment to a proper decision of the rights of others in the subject, and the appellants would be entitled to have it declared void, if it could be of any avail to them. For the decision of his question it becomes necessary to ascertain the value of the interest sold. We have already seen that the entire subject out of which the interest sold was to accrue, is to be charged first with a reasonable settlement for Mrs. Gibbs, and then with the payment of the debt due to John Gibbs, before any thing can remain for the appellants.
The record of the suit for partition is filed as an exhibit, and the report of the commissioner who sold the real estate in that record is the only evidence before us of the value of Mrs. Gibbs’ interest of one-fifth part, and by it her interest is shewn to be, in principal money, only $2,418, yielding an annual interest of. only $145 and a fraction ; it is shewn by the record .that Gibbs, -the husband, was insolvent; it does not appear that he had received any profits from the real estate before it was sold, nor does it appear that Mrs. Gibbs had any other property beside her interest in the real estate of Christopher Roberts; and, under these circumstances, I do not think it was necessary to refer it to a master to report what was a reasonable and -proper ^settlement for Mrs. Gibbs; indeed, I should, without hesitation, liave settled it all upon her, because none of the creditors of her husband had acquired any rights -paramount to hers, and the whole would make but a meagre and .inadequate settlement. The interest of Harrison M. Gibbs, sold by the trustee, .'was, therefore, on the day of sale, worth 'nothing; and so far from having been sold '•for an inadequate price, every dollar paid '.for it was so much beyond its value. The sale is, consequently, merely void, having notching to operate upon, and, consequently, not affecting the rights of others, and it would be utterly useless to set it aside, with any view to further proceedings, because no future sale could produce any avails. And acting upon the principles of a court of equity, which considers that to be done which ought to have been done, I consider the whole subject as then settled upon Mrs. Gibbs, who had a right to the settlement at that time ; and it ought then to have been made; and therefore the appellants, when they issued their subpoena, on the 9th of November, 1840, and filed their bill at the December rules following, had no right to-any recovery out of the subject in controversy.
Upon the question whether the court below erred in not declaring void, by its decree, the sale made by Rodes, the trustee under the deed in trust from Harrison M. Gibbs, another view may be taken. Suppose that deed never to have been made, and consequently no sale under it, and the appellants had instituted their suit at the time, they did to charge with the payment of the debts due them, the interest of Harrison M. Gibbs in the real estate which was then the subject of proceedings in a court of equity, for partition and division, (the only appropriate forum for such a purpose,) if I am right in the principles which I suppose should govern the decision, it seems clear that the bill of the plaintiffs should have been dismissed. In the case as it was before the court, all the materials necessary for a just decision of the rights of the respective parties were in *the record as fully and in the same condition that they could have been, had the sale been formally set aside and a reference made to a master to report the proper settlement for Mrs. Gibbs and the value of the fund out of which it was to be made; for it cannot be supposed the sales under the decree of the hustings court could have been set aside. Wh3', then, subject the parties to a useless waste of time and money to come back at last to the same point, which must have,been the result, unless the sales which ascertained the value of Mrs. Gibbs’ interest could be set aside.
If the appellants had no right of recovery out of the subject when they instituted their suit, it only remains to examine the question whether they can have acquired any such right by the mere pendency and continuance of the litigation which they commenced and have carried on without any right originally in the subject. Upon this question, the principles adjudicated in Dold’s trustee v. Geiger’s adm’r, 2 Grat. 98, are relied upon as authority for the proposition that the interest which has accrued upon Mrs. Gibbs’ share of the proceeds of sales of the real estate, during this litigation, is chargeable with the claims of the appellants. I think that case has no application to this. In that case, Dold and wife instituted suit for the recovery of *553 property in right of the wife, her title to which was controverted by others. A protracted litigation followed, which resulted in establishing Mrs. Dold’s title. After this result, upon the petition of Mrs. Dold, and with the assent of Dold, the court, by its decree, vested the whole to which Mrs. Dold was entitled in a trustee for the separate use of her and her heirs. In the final result of the suit, besides land and slaves, a large sum was recovered, much the larger part of which arose from the rents and profits of land, hires of slaves, and interest on personalty. This subject, notwithstanding the settlement, was charged with the payment of a debt due from the husband, amounting to about one-third of the amount recovered other than land and slaves, upon the principles, as I *understand that case, that the rents, profits, hires and interest had accrued during the cover-ture and during the pendency of a suit in which Dold and wife were asserting the wife’s rights of property against adverse claimants; that they were recovered during the coverture; that the legal rights of the husband attached to them, and that the settlement made by the voluntary assignment or surrender of the husband greatly exceeded in value the settlement which the equity of the wife would entitle her to claim, under the circumstances of that case.
In this case, there was nothing but land; the husband has not had any recovery for rents and profits, nor does it appear that he ever received any, or that there were any to be received; and there is no interest except what may have accrued upon the proceeds of sales of land in consequence of the pendency of this suit having retarded the action of the Hustings Court of Lynch-burg in finally disposing of the suit for partition; and in addition, the Hustings Court of Lynchburg, on the 6th of January, 1845, on the petition of Mrs. Gibbs, in which she adheres to her claim to a settlement, and requests that a large portion of the fund may be lent to her husband to enable him to make a support for the family, provided it could be so loaned as to be secured to her, and made subject to the future order of the court, directed the loan to be made upon bond and security. The rights of a plaintiff cannot be enlarged by lapse of time, except that if entitled to the thing sued for, he is entitled to the legal or natural increase, as the interest of money, hires and increase of slaves, rents and profits of land, or damages for the detention of property. But if originally not entitled to recover anything, I do not perceive how, by protracting the litigation, any such right can accrue to him. If it can, a creditor, who can succeed in delaying the decision, may defeat the wife’s equitable right to a settlement until his debt is paid out of the profits, although at the institution of the suit he had no right against her.
For these reasons, I think the decree right, and should be affirmed.